IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EP PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-425C |
| v. | ) | (Judge C. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S ANSWER AND COUNTERCLAIM

For its answer to the complaint, defendant, the United States, admits, denies, and alleges as follows:

1. Denies the allegations contained in the first sentence of paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth. The allegations contained in the second sentence of paragraph 1 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Admits the allegations contained in the third and fourth sentences of paragraph 1 to the extent supported by Contract Number DAMT01-02-C-0035 ("Contract") and Modification No. P00010 to that Contract, which are the best evidence of their contents; otherwise denies the allegations contained in the third and fourth sentences of paragraph 1. The allegations contained in the fifth sentence of paragraph 1 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

2. The allegations contained in the first sentence of paragraph 2 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Admits the allegations

contained in the second sentence of paragraph 2 to the extent supported by Modification No. P00010, issued on February 13, 2003, which is the best evidence of its contents.

3. The allegations contained in paragraph 3 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

4. The allegations contained in paragraph 4 constitute conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

5. Admits the allegations contained in the first sentence of paragraph 5 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 5. Admits the allegations contained in the second sentence of paragraph 5 to the extent supported by the cited contracting officer's May 27, 2004 final decision letter, which is the best evidence of its contents; otherwise denies the allegations contained in the second sentence of paragraph 5.

6. Defendant's responses to paragraphs 1 through 5 of the complaint are incorporated by reference.

7. Admits the allegations contained in the first sentence of paragraph 7 to the extent supported by the Contract, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 7. Admits the allegations contained in the second sentence of paragraph 7. Admits the allegations contained in the third, fourth, and fifth sentences of paragraph 7 to the extent supported by the cited email, which is the best evidence of

its contents; otherwise denies the allegations contained in the third, fourth, and fifth sentences of paragraph 7.

8. Admits the allegations contained in paragraph 8 to the extent supported by Modification No. P00010, issued on February 13, 2003, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 8.

9. Admits the allegations contained in paragraph 9 to the extent supported by Modification No. P00010, issued on February 13, 2003, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 9.

10. Denies the allegations contained in paragraph 10 for lack of knowledge or information sufficient to form a belief as to their truth.

11. Admits the allegations contained in the first sentence of paragraph 11 to the extent supported by the cited invoices, which are the best evidence of their contents; otherwise denies the allegations contained in the first sentence of paragraph 11. Admits the allegations contained in the second, third, and fourth sentences of paragraph 11 to the extent supported by the cited letter to plaintiff, which is the best evidence of its contents; otherwise denies the allegations contained in the second, third, and fourth sentences of paragraph 11.

12. Admits the allegations contained in the first sentence of paragraph 12 to the extent supported by the contracting officer's letter to plaintiff dated April 14, 2003, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 12. The allegations contained in the second sentence of paragraph 12 constitute

plaintiff's characterization of its case, to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

13. The allegations contained in the first, second, and third sentences of paragraph 13 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Admits the allegations contained in the fourth sentence of paragraph 13 that Ms. Porter attended the IPT, went to Washington, and met with Ms. Robinson-Burnette; otherwise denies the allegations contained in the fourth sentence of paragraph 13 for lack of knowledge or information sufficient to form a belief as to their truth. Denies the allegations contained in the fifth sentence of paragraph 13 for lack of knowledge or information sufficient to form a belief as to their truth.

14. The allegations contained in paragraph 14 constitute plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

15. The allegations contained in paragraph 15 constitute plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

16. The allegations contained in paragraph 16 constitute plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

17. Admits the allegations contained in the first sentence of paragraph 17 to the extent supported by the referenced contracting officer's email, which was dated April 16, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 17. Admits the allegation contained in the second sentence of paragraph 17 that plaintiff met with the contracting officer on February 2, 2004; otherwise denies the allegations contained in the second sentence of paragraph 17. Admits the allegations contained in the third sentence of paragraph 17. The allegations contained in the fourth sentence of paragraph 17 constitute conclusions of law and plaintiff's characterization of its case to which no reply is necessary; to the extent they may be deemed allegations of fact, they are denied.

18. Admits the allegations contained in paragraph 18 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 18.

19. Admits the allegations contained in paragraph 19 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 19.

20. Plaintiff's complaint does not include paragraph 20.

21. Admits the allegations contained in paragraph 21 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 21.

22. Admits the allegations contained in paragraph 22 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 22.

23. Admits the allegations contained in paragraph 23 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 23.

24. Admits the allegations contained in the first, second, and third sentences of paragraph 24 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in the first, second, and third sentences of paragraph 24. Denies the allegations contained in the fourth sentence of paragraph 24.

25. Admits the allegations contained in paragraph 25 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 25.

26. Admits the allegations contained in paragraph 26 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 26.

27. Admits the allegations contained in paragraph 27 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 27.

28. Denies the allegations contained in paragraph 28 for lack of knowledge or information sufficient to form a belief as to their truth.

29. Admits the allegations contained in paragraph 29 to the extent that plaintiff submitted a proposal in response to solicitation number DAMT01-03-R-0072, which proposal is the best evidence of its contents; otherwise denies the allegations contained in paragraph 29.

30. Admits the allegations contained in paragraph 30 to the extent that the contracting officer initiated an investigation of plaintiff, as required by 48 C.F.R. § 3.104-7, following the release of confidential source selection information to plaintiff in connection with solicitation number DAMT01-03-R-0072, and that the Commander of the Surface Deployment and Distribution Command ("SDDC") subsequently directed that a request for a formal investigation be made; otherwise denies the allegations contained in paragraph 30.

31. Denies.

32. Denies the allegations contained in paragraph 32 for lack of knowledge or information sufficient to form a belief as to their truth.

33. Denies.

34. Admits the allegations contained in paragraph 34 to the extent supported by the cited proposals, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 34.

35. The allegations contained in the first sentence of paragraph 35 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to

the extent they may be deemed allegations of fact, they are denied. Admits the allegations contained in the second sentence of paragraph 35 to the extent supported by the cited ratings documents, which are the best evidence of their contents; otherwise denies the allegations contained in the second sentence of paragraph 35. The allegations contained in the third sentence of paragraph 35 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

36. Denies.

37. The allegations contained in paragraph 37 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

38. The allegations contained in paragraph 38 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

39. Admits the allegations contained in paragraph 39 to the extent supported by the contracting officer's final decision dated November 9, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 39.

40. The allegations contained in paragraph 40 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

41. Defendant's responses to paragraphs 1 through 40 of the complaint are incorporated by reference.

42. Admits the allegations contained in paragraph 42 to the extent supported by 48 C.F.R. § 52.212-4, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 42.

43. Admits the allegations contained in paragraph 43 to the extent supported by the Contract, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 43.

44. The allegations contained in paragraph 44 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

45. The allegations contained in paragraph 45 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

46. The allegations contained in paragraph 46 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

47. The allegations contained in paragraph 47 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

48. Defendant's responses to paragraphs 1 through 47 of the complaint are incorporated by reference.

49. Admits the allegations contained in paragraph 49 to the extent supported by plaintiff's settlement proposal, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 49.

50. Admits the allegations contained in the first and second sentences of paragraph 50 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in the first and second sentences of paragraph 50. The allegations contained in the third sentence of paragraph 50 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

51. The allegations contained in paragraph 51 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

52. The allegations contained in paragraph 52 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

53. Admits the allegations contained in paragraph 53 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 53.

54. Admits the allegations contained in the first sentence of paragraph 54 to the extent supported by the cited equipment contract, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 54. The allegations contained in the second sentence of paragraph 54 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

55. Admits the allegations contained in paragraph 55 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 55.

56. Denies the allegations contained in paragraph 56 for lack of knowledge or information sufficient to form a belief as to their truth.

57. The allegations contained in paragraph 57 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

58. Denies the allegations contained in paragraph 58 for lack of knowledge or information sufficient to form a belief as to their truth.

59. The allegations contained in paragraph 59 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

60. The allegations contained in paragraph 60 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

61. The allegations contained in paragraph 61 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

62. Admits the allegations contained in paragraph 62 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 62.

63. Denies the allegations contained in paragraph 63 for lack of knowledge or information sufficient to form a belief as to their truth.

64. Admits the allegations contained in the first sentence of paragraph 64 to the extent supported by the cited Contract, which is the best evidence of its contents; otherwise denies the allegations contained in the first sentence of paragraph 64. Denies the allegations contained in the second and third sentences of paragraph 64 for lack of knowledge or information sufficient to form a belief as to their truth.

65. Denies the allegations contained in paragraph 65 for lack of knowledge or information sufficient to form a belief as to their truth.

66. Denies the allegations contained in paragraph 66 for lack of knowledge or information sufficient to form a belief as to their truth.

67. Admits the allegations contained in paragraph 67 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 67.

68. The allegations contained in paragraph 68 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

69. The allegations contained in paragraph 69 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

70. Admits the allegations contained in paragraph 70 to the extent supported by plaintiff's settlement proposal, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 70.

71. Admits the allegations contained in paragraph 71 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 71.

72. Denies.

73. The allegations contained in paragraph 73 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

74. The allegations contained in paragraph 74 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

75. The allegations contained in paragraph 75 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

76. Admits the allegations contained in paragraph 76 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 76.

77. Denies the allegations contained in paragraph 77 for lack of knowledge or information sufficient to form a belief as to their truth.

78. The allegations contained in paragraph 78 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

79. The allegations contained in paragraph 79 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

80. Denies the allegations contained in paragraph 80 for lack of knowledge or information sufficient to form a belief as to their truth.

81. The allegations contained in paragraph 81 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

82. Admits the allegations contained in paragraph 82 to the extent supported by the contracting officer's final decision dated May 27, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 82.

83. The allegations contained in paragraph 83 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

84. The allegations contained in paragraph 84 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

85. Defendant's responses to paragraphs 1 through 84 of the complaint are incorporated by reference.

86. Admits the allegations contained in paragraph 86 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 86.

87. Admits the allegations contained in paragraph 87 to the extent supported by the contracting officer's final decision dated November 9, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 87.

88. Admits the allegations contained in paragraph 88 to the extent supported by the contracting officer's final decision dated November 9, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 88.

89. Admits the allegations contained in paragraph 89 to the extent supported by Modification No. P00005 to the Contract, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 89.

90. Admits the allegations contained in paragraph 90 to the extent supported by Modification No. P00005 to the Contract, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 90.

91. Admits the allegations contained in paragraph 91 to the extent supported by Modification No. P00005 to the Contract, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 91.

92. Admits the allegations contained in paragraph 92 to the extent supported by the cited document, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 92.

93. Admits the allegations contained in paragraph 93 to the extent supported by the contracting officer's final decision dated November 9, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 93.

94. Admits the allegations contained in paragraph 94 to the extent supported by the contracting officer's final decision dated November 9, 2004, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 94.

95. The allegations contained in paragraph 95 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

96. The allegations contained in paragraph 96 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

97. The allegations contained in paragraph 97 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

98. The allegations contained in paragraph 98 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

99. The allegations contained in paragraph 99 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

100. Defendant's responses to paragraphs 1 through 99 of the complaint are incorporated by reference.

101. The allegations contained in paragraph 101 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

102. The allegations contained in paragraph 102 constitute conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

103. Denies that plaintiff is entitled to the relief requested following paragraph 102, or to any relief whatsoever.

104. Denies each and every allegation not previously admitted or otherwise qualified.

## AFFIRMATIVE DEFENSES

105. Plaintiff's claim is barred by illegality as a result of submitting a false claim and engaging in fraud related to the Contract.

106. Plaintiff's claim is barred by fraud related to the Contract.

## SPECIAL DEFENSE BY WAY OF COUNTERCLAIM

107. This counterclaim arises pursuant to the forfeiture statute, 28 U.S.C. § 2514, the antifraud provision of the Contract Disputes Act, 41 U.S.C. § 604, and the False Claims Act, 31 U.S.C. §§ 3729-3733. The Court possesses jurisdiction pursuant to 28 U.S.C. §§ 1503 and 2508.

108. Defendant and counterclaim plaintiff is the United States.

109. Plaintiff and counterclaim defendant is EP Productions, Inc. ("EP").

Factual Background

The Contract

110. On March 21, 2002, the Military Surface Deployment and Distribution Command ("SDDC") awarded Contract Number DAMT01-02-C-0035 ("Contract") to EP Productions, Inc. ("EP"), to plan and conduct SDDC's annual symposiums in 2003 and 2004 at the Adams Mark Hotel in Denver, Colorado ("Adams Mark"). The Contract was a firm, fixed-price contract with a two-year performance period, from April 20, 2002, through April 19, 2004.

111. The Contract contains the standard Changes Clause for Commercial Items, FAR 52.212-4(c), which provides that changes in the terms and conditions of the Contract may be made only be written agreement of the parties.

112. The Contract also contains the standard Disputes Clause, FAR 52.233-1, which prescribes the procedure for a contractor asserting a claim arising under a contract. The clause requires such claims to be made in writing and submitted to the contracting officer for a written decision. The clause also provides that a routine submission may be converted to a claim if it is disputed as to liability or amount or is not acted upon in a reasonable time.

113. Section 10.0 of the Contract's Statement of Work, "Collection of Registration Fees," provided that "[t]he Contractor shall be responsible for the collection, security and disbursement of the registration fee monies." The Contract contemplated that EP would use these monies for the purpose of "protecting contractual food and beverage obligations between the Contractor and the hotel . . . ."

114. Attachment 5 to the Contract provided that the registration fee for the 2004 symposium would be $230.00.

Modification of the Contract

115. On or about September 2002, EP's President, Elizabeth Porter, sought to modify the Contract to ensure that EP's food and beverage expenses were fully compensated in the event that collected registration fees did not satisfy the food and beverage costs charged to EP by the Adams Mark Hotel. Ms. Porter represented that EP's contract with the Adams Mark required a minimum $350,000.00 for food and beverage service per event.

116. In response, SDDC asked for a copy of the EP-Adams Mark contract.

117. On October 4, 2002, EP's attorney sent a letter to SDDC. In lieu of the Contract, the attorney stated that he was providing "a certified copy of the pertinent provisions thereof as it relates in any way, by reference or inference, to food and beverage guarantees for the Symposium contract in 2003 and 2004." He explained, "I trust you will agree that the less the Government is involved in the actual hotel contract, the better." Exhibit A.

118. Attached to the letter was a certified and notarized statement, signed by Elizabeth Porter Taylor. The statement purported to quote the EP-Adams Mark contract as stating that "[t]he Group agrees to spend a minimum of $350,000 for banquet and meeting food and beverage over the dates of the Event." Ms. Porter represented this statement "to be true and accurate as extracted from the EP Productions, Inc. 2003 and 2004 contract." Exhibit A.

119. The letter also suggested language for the proposed contract modification. Specifically, the letter suggested that the contract provide: "At the conclusion of on-site Registration, Contractor shall furnish the Government a written report setting forth the total registration fees collected, at which time, the Government agrees to reimburse Contractor for the difference, if any, between $350,000.00 and the total registration fees collected." Exhibit A.

120. Based upon these representations, SDDC agreed to modify the Contract. On October 21, 2002, SDDC and EP executed Modification Number P00005, which provided that "the government will reimburse the difference, over and above the contract amount for 2003 and 2004, between the fees to be collected from 1,600 attendees at the rates set forth in Attachment 5 and any lesser amount of fees resulting from less than 1,600 attendees." The 1,600 attendee count was used to ensure that EP would collect the $350,000.00 EP had represented as necessary to meet its minimum food and beverage service obligation to the Adams Mark.

EP's Claims

121. On July 27, 2004, EP submitted an invoice to the contracting officer seeking $25,070.00, based upon the assertion that 1,491 persons had attended the 2004 symposium and paid the required registration fees. The $25,070.00 represents the difference between a 109 shortfall in attendees (1,600 minus 1,491) times the $230.00 registration fee amount.

122. Pursuant to Modification Number P00005, the contracting officer asked for documents in support of the invoice.

123. EP refused to furnish documentation stating that: "The dispute between the parties is no longer limited to the parties. In fact, there are several subs and other entities that must be paid . . . There is a modification. The modification is fair and reasonable because the parameters were set by the agency. Pursuant to that modification, EP submitted an invoice. The only thing left is for the invoice to be paid."

124. On November 9, 2004, the contracting officer issued a final decision denying EP's claim because "the elements of your Claim are not sufficiently supported by the documents you submitted, or by the contract file, or other documentation." The final decision stated that the "guarantee clause modification on which this claim was established is apparently based on misleading statements by Ms. Porter as to EP Productions $350,000 F&B obligation to the Adams Mark Hotel."

125. On April 1, 2005, EP appealed the contracting officer's decision to this Court, reasserting its claim for $25,070.00 pursuant to Modification Number P00005 of the Contract, upon the basis that the registration fees collected by EP for the symposium did not compensate EP for the minimum required by the Adams Mark for food and beverage service.

<u>EP's False Statements and False and Fraudulent Claims</u>

126. EP's statements and claims are false and fraudulent in the following respects:

a. The contract between EP and the Adams Mark contained no minimum for food and beverage service. Exhibit B.

b. The contract provided only that "[p]lanned banquet food and beverage revenue is $121,000.00." As stated in the contract, this was a "planned" amount, not a minimum obligation. In fact, EP was obligated to pay only for food and beverage service actually provided. Exhibit B.

c. EP's actual total food and beverage expense for the 2004 symposium was $115,065.85.

127. Ms. Porter and EP knew that its statements and claims as alleged in paragraphs 105-126 above, were false and fraudulent when made because at all times relevant Ms. Porter and EP knew (a) that its contract with the Adams Mark did not contain a minimum for food and beverage service, (b) that it had fraudulently induced SDDC to enter into Modification Number P00005 based upon its misrepresentation that the EP-Adams Mark contract contained a minimum for food and beverage service, and (c) that its claims for $25,070.00 to both the contracting officer and in this Court were based upon a fraudulently induced contract modification.

<u>Count I</u>

Forfeiture Of Fraudulent Claims

28 U.S.C. § 2514

128. The United States incorporates by reference the allegations set forth in paragraphs 105 through 127 above.

129. EP practiced or attempted to practice fraud against the United States in the proof, statement, establishment, or allowance of the claims identified in the paragraphs above. Namely,

EP falsified its claims against the United States when it represented to the Government that it was required to pay a $350,000.00 minimum fee to the Adams Mark Hotel in order to receive a contractual guarantee of a $350,000.00 reimbursement in registration fees.

130. Therefore, EP is liable for the forfeiture of its claims, in their entirety, pursuant to 28 U.S.C. § 2514.

Count II

Contract Disputes Act

41 U.S.C. § 604

131. The United States incorporates by reference the allegations set forth in paragraphs 105 through 127 above.

132. EP is unable to support portions of its claims as alleged above because of a misrepresentation of fact or fraud.

133. Therefore, EP is liable to the United States pursuant to the Contract Disputes Act, 41 U.S.C. § 604, for such unsupported portions of its claims, plus the Government's costs attributable to reviewing such parts of its claims.

Count III

False Claims Act – Presentation of False Claims

31 U.S.C. § 3729(a)(1)

134. The United States incorporates by reference the allegations set forth in paragraphs 105 through 127 above.

135. For purposes of obtaining payment or approval, EP knowingly presented, or caused to be presented, false or fraudulent claims to officers or employees of the United States.

136. Therefore, EP is liable pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), for a civil penalty of not less than $5,500 and not more than $11,000 for each claim presented.

Count IV

False Claims Act – Use Of False Statements

31 U.S.C. § 3729(a)(2)

137. The United States incorporates by reference the allegations set forth in paragraphs 105 through 127 above.

138. For purposes of getting false or fraudulent claims paid or approved by the Government, EP knowingly made, used, or caused to be made or used, false records or statements.

139. Therefore, EP is liable pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(2), for a civil penalty of not less than $5,500 and not more than $11,000 for each claim presented.

Count V

False Claims Act – Conspiracy to Defraud

31 U.S.C. § 3729(a)(3)

140. The United States incorporates by reference the allegations set for in paragraphs 105 through 127 above.

141. For purposes of getting false or fraudulent claims allowed or paid, EP, together with its president, Elizabeth Porter Taylor, entered into a conspiracy to defraud the Government.

142. Therefore, EP is liable pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(3), for a civil penalty of not less than $5,500 and not more than $11,000 for each claim presented.

Prayer For Relief

WHEREFORE, the United States requests that judgment be entered in its favor and against EP as follows:

(a) on Count I (Forfeiture of Fraudulent Claims), for forfeiture of Plaintiff's entire claim;

(b) on Count II (Contract Disputes Act), for damages in the amount of $25,070.00, plus the Government's cost of reviewing such claims;

(c) on Count III (False Claims Act – Presentation of False Claims), for such civil penalties as are allowable by law;

(d) on Count IV (False Claims Act – Use of False Statements), for such civil penalties as are allowable by law;

(e) on Count V (False Claims Act – Conspiracy to Defraud), for such civil penalties as are allowable by law; and

(f) for such other and further relief as the Court may deem appropriate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ HAROLD D. LESTER, JR.
HAROLD D. LESTER, JR.
Assistant Director

S/ KELLY B. BLANK
KELLY B. BLANK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St, N.W
Washington, D.C. 20530
Tele: (202) 353-7578
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:
CAPTAIN PATRICK BUTLER
Attorney
United State Army Legal
Services Agency

August 19, 2005

**EXHIBIT A**

THE FRICKS FIRM, P.C.
ATTORNEYS AT LAW

ROBERT ABNEY FRICKS
BRIAN C. RANCK

1922 FORSYTH STREET, SUITE 200
POST OFFICE BOX 4086
MACON, GEORGIA 31208-4086
TELEPHONE (478) 743-6300
FACSIMILE (478) 743-6310
E-MAIL firm@fricksfirm.com

October 4, 2002

Mr. Frank Giordano
Deputy PARC
HQ-MTMC-Acquisition
200 Stovall Street
Hoffman Bldg. II
Alexandria, VA 22332-5000

Re: EP Productions, Inc.
Contract DAMT01-02-0035

Dear Mr. Giordano:

This firm represents EP Productions, Inc., the incumbent contractor for the MTMC Symposium for the Military Traffic Management Command. Specifically, my client informs me that the Government wishes to modify certain contractual terms relative to DAMT01-02-0035, to wit:

a) Page 13 of 36, Attachment 5, Item 7;
b) Page 15 of 36, Attachment 5, Item 7.

The current version thereof states:

> All Symposium attendees and exhibitors, government and industry, are required to pay the registration fee. This includes all Symposium support team members and functional breakout speakers and all other speakers.

Based on a facsimile from Ms. Toye Latimore dated September 28, 2002, it is our understanding that the Government wishes to modify those provisions as follows:

> All persons who attend or participate in any of the Symposium events or functions, including those in meeting or public space, other than those that take place only in the separate exhibit area (Tower building – 2nd floor), are required to pay the registration fee. Persons who have not paid the registration fee will not be permitted entry into any Symposium area or event other than entry into the exhibit area. This includes Symposium

support team members, functional breakout speakers, and employees and representatives of exhibitors.

The Government is certainly aware of the damaging impact such a change in the Contract might have. Accordingly, EP Productions, Inc. believes that any modification must contain language that protects it in light of prior commitments derived from the original Solicitation, including the SOW and Attachments created and disbursed by the Government in January 2002.

In an effort to equitably resolve this issue, EP Productions, Inc. will agree to the proposed Government modification provided the Contract is further amended as follows:

1. By Adding The Following To Page 14 of 36 – Attachment 5:

Item 13: At the conclusion of on-site Registration, Contractor shall furnish the Government a written report setting forth the total registration fees collected, at which time, the Government agrees to reimburse Contractor for the difference, if any, between $350,000.00 and the total registration fees collected. Any such reimbursement required hereunder shall be included and paid to Contractor upon the Government's receipt of a separate invoice submitted to the Payment Office.

over & above the contract amt for 2003 & 2004

2. By Adding The Following To Page 16 of 36 – Attachment 5:

Item 13: At the conclusion of on-site Registration, Contractor shall furnish the Government a written report setting forth the total registration fees collected, at which time, the Government agrees to reimburse Contractor for the difference, if any, between $350,000.00 and the total registration fees collected. Any such reimbursement required hereunder shall be included and paid to Contractor upon the Government's receipt of a separate invoice submitted to the Payment Office.

3. By Removing The Following From SOW 10.3

At 10.3: Remove the second sentence. It will no longer apply.

4. By Removing The Following From SOW 13.2

At 13.2: the word "exhibit" from sentence one. It will no longer apply.

Finally, my client understands from Ms. Jackie Woodson's e-mail dated October 2, 2002, that the Government wishes to review a copy of the food and beverage guarantees contained in the hotel contracts with EP Productions, Inc. Accordingly, I include herewith a certified copy of

the pertinent provisions thereof as it relates in any way, by reference or inference, to food and beverage guarantees for the Symposium contract in 2003 and 2004. For obvious reasons, especially given the lawsuit between Showmakers, Inc. and the Atlanta Hilton and Towers arising out of the 2001 Symposium, the entire contract is not included. I trust you will agree that the less the Government is involved in the actual hotel contract, the better.

Kindly consider the above, as I believe that it represents a good faith effort on the part of EP Productions, Inc. to resolve the outstanding issues concerning registration fees. While I'm certain we all regret the time it has taken to get to this point, perhaps this "middle ground" will finally put it to rest – and hopefully, by close of business Tuesday, October 8, 2002.

My client anxiously awaits the modification. In the unlikely event this issue requires further discussion, please contact Ms. Porter direct at (770) 804-0095.

Looking forward to another successful Symposium, I am

Yours sincerely,

Robert Abney Fricks /de

Robert Abney Fricks

RAF/de

cc: Toye Latimore
Jeanie Bell Winslow
EP Productions, Inc.

# THE FRICKS FIRM, P.C.

ATTORNEYS AT LAW

ROBERT ABNEY FRICKS
BRIAN C. RANCK

1922 FORSYTH STREET, SUITE 200
POST OFFICE BOX 4086
MACON, GEORGIA 31208-4086
TELEPHONE (478) 743-6300
FACSIMILE (478) 743-6310
E-MAIL firm@fricksfirm.com

Exert from EP Productions Symposium Contract – 2003

"The Group agrees to spend a minimum of $350,000 for banquet and meeting food and beverage over the dates of the Event ("F&B Minimum"). This F&B Minimum does not include any applicable charges for meeting room rental, service charges, tax, labor charges, audio visual, parking, restaurant or room service charges, icw food and beverage or any other miscellaneous charges incurred. Should your final count drop below the approximate number of guests listed in your program Agenda, or cancellation occurs for one or more of your events, the Parties agree that the difference between the F&B Minimum and the actual food and beverage expenditure will be assessed to your Master Account."

Exert from EP Productions Symposium Contract – 2004

"The Group agrees to spend a minimum of $350,000 for banquet and meeting food and beverage over the dates of the Event ("F&B Minimum"). This F&B Minimum does not include any applicable charges for meeting room rental, service charges, tax, labor charges, audio visual, parking, restaurant or room service charges, icw food and beverage or any other miscellaneous charges incurred. Should your final count drop below the approximate number of guests listed in your program Agenda, or cancellation occurs for one or more of your events, the Parties agree that the difference between the F&B Minimum and the actual food and beverage expenditure will be assessed to your Master Account."

ANNA M. PALMER
MY COMMISSION EXPIRES
AUG 8 2005
FULTON COUNTY, GA.
NOTARY PUBLIC

I hereby certify that the above statements are deemed to be true and accurate as extracted from the EP Productions, Inc. 2003 and 2004 contract.

Elizabeth Porter Taylor

Elizabeth Porter Taylor

Anna M. Palmer

NOTARY PUBLIC

**EXHIBIT B**

## GROUP SALES CONTRACT

DATE: January 23, 2002
GROUP NAME: Porter Productions
CONTACT: Ms. Elizabeth Porter
TITLE: President
ADDRESS: 8351 Roswell Rd NE Suite 356
Atlanta, GA, 30350
PHONE: 770-804-0095

### DESCRIPTION AND DEFINITIONS

The Adams Mark Denver (hereafter known as The Hotel) is pleased to confirm the following arrangements for Porter Productions, Inc., it's represenatives and assigns (hereafter known as The Group) over the dates of March 17, 2004 through March 27, 2004.

### MEETING DATES AND GUEST ROOM BLOCK

YEAR: 2004

| | W | Th | F | S | Su | M | T | W | Th | S | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 3/17 | 3/18 | 3/19 | 3/20 | 3/21 | 3/22 | 3/23 | 3/24 | 3/25 | 3/26 | 3/27 |
| Group | 3 | 10 | 15 | 200 | 900 | 1200 | 1200 | 1200 | 300 | 10 | 2 |
| Total | 3 | 10 | 15 | 200 | 900 | 1200 | 1200 | 1200 | 300 | 10 | 2 |

TOTAL ROOM NIGHTS: 5,040

### GUEST ROOM RATES AND POLICIES

Government rates are based upon the current federal per diem for the City of Denver. In the event the per diem is raised or lowered prior to this event, the new per diem will prevail. The current prevailing government per diem:

Standard Single Occupancy: $112.00
Standard Double Occupancy: $112.00
Standard Triple Occupancy: $142.00
Standard Quadruple Occupancy: $157.00

We are pleased to confirm to The Group the Corporate rates listed below:

Standard Single Occupancy: $137.00
Standard Double Occupancy: $137.00
Standard Triple Occupancy: $160.00
Standard Quadruple Occupancy: $175.00

EEP 1/23/02

These room rates are 10% commissionable to The Group and subject to applicable taxes at the time of the conference.

Your group rates will be honored for your attendee's three (3) days before group arrival and three (3) days after group departure based on availability.

The Hotel will offer a two-tier rate. The Government attendee's rate is the prevailing per diem exclusive of all taxes, tariffs and fees. In order to qualify for the Government rate, individuals must be on and present travel orders at time of check-in. All individuals without travel orders will be charged the corporate attendee rate. Both the Government rate and the corporate rate are inclusive of energy fees or surcharges and any applicable future imposed miscellaneous fees. No early departure fees will be imposed on attendees. By March 1, 2004, The Group will supply to The Hotel the parameters listing the rate breakdown to be posted on individual room folios for attendees. The Hotel agrees to list the information in this fashion to room folios to allow for attendees to be properly reimbursed.

In the event a wavier is issued by the Government for Government attendees traveling to this conference, The Hotel will work with The Group in setting up a voucher or rebate system. This wavier will not effect revenues derived by The Hotel in any form or fashion.

In order to protect The Hotel and The Group from unnecessary attrition, The Hotel will not offer any guest room or suite rates lower than those listed within this Agreement during the period of March 20 – 27, 2004.

Reservations cancelled within (72) hours of arrival will be charged one night's room and tax including no-shows. The Hotel will provide a list of these "charged reservations" to The Group on March 23, 2004. These "charged reservations" will be credited to The Group's pick-up and are commissionable at 10%.

The Hotel will have all computer terminals opened and staffed at both front desks during primary check-in and check-out times. Primary check-in and check-out times include but are not limited to: Sunday, March 21 and Monday, March 22, 2004 from 3:00pm to 9:00pm and Thursday, March 25 and Friday, March 26, 2004 from 6:00am to 12:00pm. The Hotel recognizes that few attendees will utilize video check-out.

Due to the nature of The Group and with consistent history in years past, The Hotel will allow The Group to oversell rooms in a quantity not exceeding one hundred fifty (150) per day. The Hotel will treat these reservations as valid reservations and will adhere to the 24-hour return confirmation number policy listed below under ROOM RESERVATION PROCEDURES. The Group will be responsible for all charges including transportation, notification and associated hotel charges in the unlikely event of a "walk" situation due to The Groups voluntary oversell of 150 rooms per night. The Group will have a representative on hand to assist in the relocation process in the event of a "walk" situation.

In the event a room is not available for a guest holding a guaranteed room reservation and the guest room for that evening does not exceed the Guest Room Block by date then The Hotel will pay for the first night that they are unable to accommodate the attendees at The Hotel at an equivalent alternative property (as identified by the Mobil Rating Guide), transportation to and from such property twice a day on a daily basis to attend the meetings at The Hotel and one five (5) minute long distance call. The Hotel will also list the guest's name with The Hotel switchboard in order to facilitate the transfer of the guest's calls to the alternative property.

EEP 1/23/02

## COMPLIMENTARY ACCOMMODATIONS

The Hotel will provide one (1) complimentary room night, at the lowest group room rate, on a nightly basis, for each forty (40) room nights actually occupied by attendees of The Group and paid for at

the contract rate. The Hotel shall credit The Group's Master Account for the total number of complimentary accommodations accrued by The Group at the conclusion of your meeting.

It is our understanding that you will utilize approximately 30-40 complimentary room nights during the conference. We will apply the remaining balance of unused complimentary room nights as a credit to your master account in the value of the net single per diem rate.

A list of complimentary room assignments indicating guest name, address, type of accommodation request, and arrival/departure dates should be sent via rooming list to your Convention Services Manager at least seven (7) days prior to the first arrival date.

The Hotel will extend eight (8) complimentary nights at The Hotel on the concierge floor to The Group on a space available basis for pre-planning and site visits. These complimentary nights cannot be used in *conjunction with the conference dates. The Hotel will open the concierge breakfast on the 22nd floor at* 5:45am on the mornings of March 22, 23 and 24, 2004.

## SPECIAL CONSIDERATIONS

We are pleased to offer you the following additional considerations, provided at least eighty-five percent (85%) of the room nights in your block are occupied and paid for at your group rates.

- Ten (10) complimentary reserved parking spaces from 3/17/04 to 3/28/04
- Fourteen (14) upgrades to Executive Suites (10 in the Plaza Bldg) at the single current government per diem rate from 3/17/04 through 3/28/04
- Two (2) – Two (2) Bedroom complimentary Presidential Suites in the Plaza Bldg with concierge privileges from 3/17/04 through 3/28/04
- Two (2) - Two (2) Bedroom complimentary Deluxe Suite in the Plaza Bldg with concierge privileges from 3/17/04 through 3/28/04
- One (1) complimentary parking space for a 24 foot truck and trailer from 3/17/04 to 3/28/04
- Six (6) complimentary parking passes for 3/24/04
- Six (6) round-trip transportation from DIA to The Hotel

A total value of $50,570.00.

## ROOM RESERVATION PROCEDURES

The Group will submit rooming lists through a secured method to The Hotel via e-mail, as they become available (beginning approximately 90 days prior to arrival). Each list will identify government and non-government attendees and will contain all sufficient information for The Hotel to make a confirmed reservation. The Hotel understands The Group's critical timing and agrees to e-mail confirmation numbers, cancellation numbers and change confirmation acceptance or numbers to The Group within 24 hours of receipt of each rooming list.

EEP 1/23/02

The Hotel will appoint one "Group Reservations Coordinator" to work with The Group in securing confirmations and reservation issues. All reservations must be received at The Hotel on or before 12:01am

EST on Wednesday, March 3, 2004. Reservations received after this date and time will be accepted on a space available basis only and at the group rate if available. The Hotel will continue to accept name changes and substitutions on reservations through March 27, 2004 and will accept date changes upon availability

*All reservations associated with this conference will be applied to The Group's guest room block and are commissionable at 10%.*

**CHECK-IN / CHECK-OUT**

Guest accommodations will be available at 3:00 p.m. on arrival day and reserved until 12:00 noon on departure day. Any attendee wishing special consideration for late checkout should inquire at the front desk on the day of departure.

**GUEST ROOM CHARGES**

*It is understood your attendees will be responsible for their room, tax and incidental charges.*

**MEETING SPACE REQUIREMENTS**

The Hotel agrees to set aside, reserve and hold the specific meeting space listed in Attachment Two to accommodate The Groups program.

**MEETING SPACE RENTAL**

*You're requested meeting space has a retail value of $300,000. In consideration of your sleeping room* commitment and meeting room requirements, all of the outlined meeting space will be complimentary provided The Group uses at least eighty-five percent (85%) of its total guest room commitment or 4,284 room nights. In the event less than 4,284 room nights are utilized, meeting space rental will be calculated on the following.

| Total # of Consumed Rooms Nights | Meeting Room Rental |
|---|---|
| 4,283 - 3,641 room nights | $75,000 Flat |
| 3,640 - 3,094 room nights | $120,000 Flat |
| 3,093 - 2,630 room nights | $180,000 Flat |
| 2,629 - 2,234 room nights | $240,000 Flat |
| 2,233 room nights or less | $300,000 Flat |

EEP 1/23/02

**TERMS AND CONDITIONS GOVERNING USE OF EXHIBIT SPACE**

The Hotel has reserved for The Group exhibit space consisting of: The Grand Ballroom, North Convention Lobby, South Convention Lobby, and Tower Court A-D. This exhibit area will be available for set-up at 7:00 AM on Saturday, March 20, 2004. Exhibit show days will be Monday March 22 - Wednesday March 24,

2004. All exhibits, materials and decoration equipment must be dismantled and removed from the exhibit area by 10:00 PM on Thursday March 25, 2004. Further, The Hotel will provide tables and chairs for Government booths. The exhibit space does not include exhibit storage; drayage (material handling); decoration, special lighting; security services; cleaning or janitorial services; labor required to install, erect, drape or decorate exhibit booths or the exhibit area and/or to move exhibit materials in and out of the Hotel.

Security utilized during exhibitor move-in and exhibitor dismantle days is The Group's responsibility. The Hotel's Convention Services Department will be glad to assist in obtaining security services.

In the event damage occurs to the furniture of the Hotel, fixtures, building or equipment caused by installation, presence and/or removal of exhibits and exhibit materials, the Group shall reimburse the Hotel for the cost of such repair or replacement as may be necessary.

The Group is responsible for securing the approval of the Denver Fire Marshall for its floor plan prior to the exhibit date. Copies must be sent to the Convention Services Manager for approval before final printing of the Exhibitor's prospectus.

The Group is responsible for submitting an executed release of liability from each Exhibitor or its third-party representative in charge of providing installation and dismantling services prior to set-up. The release must include the following language:

*Exhibitor shall be fully responsible to pay for any and all damages to property owned by the Hotel, its owners or managers, which results from any act or omission of Exhibitor. Exhibitor agrees to defend, indemnify and hold harmless the Hotel, its owners, managers, officers or directors, agents, employees, subsidiaries and affiliates from any damages or charges resulting from or arising from or out of the Exhibitor's use of the property. Exhibitor's liability shall include all losses, costs, damages or expenses arising from or out of or by reason of any accident or bodily injury or other occurrences to any person or persons, including the Exhibitor, its agents, employees, and business invitees which arise from or out of Exhibitor's occupancy and/or use of the exhibition premises, the Hotel or any part thereof. The Exhibitor understand that the Hotel does not maintain insurance covering the Exhibitor's property and that it is the sole responsibility of the Exhibitor to obtain such insurance unless the damage is caused as a result of the sole negligence of The Hotel, its agents, employees, servants, contractors and/or assigns.*

The Group shall assume (jointly and severally with Exhibitor) responsibility for any claims arising out of the use of the exhibition premises of the Hotel. In this regard, the Group agrees to indemnify and defend the Hotel and its owners, agents and employees against any claims or expenses arising out of the use of the exhibition premises.

The Group agrees to obtain and maintain during the use of the exhibition premises Comprehensive General Liability insurance, including contractual liability covering the Group's indemnity in this contract. Such insurance shall be in the amount of not less than $2,000,000 combined single limit for personal injury and property damage. The Hotel, its owners, and HBE Corporation shall be named as additional insured on such policy, and Group shall supply the Hotel with Certificates of Insurance prior to the use of the Exhibition Premises.

EEP
1/23/02

FOOD AND BEVERAGE

Attachment One outlines food and beverage menus and prices to be utilized by The Group during March 17 – 27, 2004.

ANTICIPATED ROOM NIGHT AND BANQUET FOOD AND BEVERAGE REVENUE FIGURES

At this time, the Hotel is holding 5040 room nights for your use over the contracted dates, totaling revenues of $642,758.00. Planned banquet food and beverage revenue is $121,000.00. All revenue figures are net and not inclusive of taxes, service charge or commissions.

ATTRITION

In the event The Group picks up less than 5040 Room Nights, The Group agrees to pay The Hotel lost profit on rooms not utilized as liquidated damages as listed below:

| Room Nights Utilized | |
|---|---|
| 5040 – 4284 Nights | No Charge |
| 4283 – 3640 Nights | $115.00 per night |
| 3639 – 3093 Nights | $125.00 per night |
| Less than 3092 Nights | $130.00 per night |

CANCELLATION

If Government funding is not assigned, delivered and designated to The Group for the Adams Mark Denver each year as an independent year, this contract is null and void. The Group has deemed funded once this contract is signed per telephone conversation on December 27, 2001 with F. Andra van Hall, Brian Fedorowicz, Dennis Kragh and Jimmy Ray Dalton of The Hotel, Elizabeth Porter of The Group and Robert Fricks, Esq. representing The Group. In the event funding was provided to The Group for the Adams Mark Denver and The Group was to cancel, the following policies would apply:

In the event of a group cancellation occurring 0 to 90 days prior to arrival, liquidated damages in the amount of ninety percent (90%) of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures" will be due, plus applicable taxes and service charges.

In the event of a group cancellation occurring 91 to 180 days prior to arrival, liquidated damages in the amount of eighty percent (80%) of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures" will be due, plus applicable taxes and service charges.

In the event of a group cancellation occurring 181 to 365 days prior to arrival, liquidated damages in the amount of seventy percent (70%) of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures" will be due, plus applicable taxes and service charges.

EEP 1/23/02

In the event of a group cancellation occurring between the time of acceptance of this contract and 366 days prior to arrival, liquidated damages in the amount of fifty percent (50%) of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures" will be due, plus applicable taxes and service charges.

FORCE MAJEURE

Neither party hereto shall be held responsible in any form or fashion for any damages or liability, monetarily or otherwise, for any failure to complete or partial performance of any provision listed within this Agreement due to or caused by Acts of God, threat of war, war, fire, flood, labor dispute, terrorism, hurricanes, earthquakes, riot or insurrection, government regulations or changes, acts of Congress or the Department of Defense and the like.

BILLING PROCEDURES

All individuals who attend will be responsible for their own room, taxes (if applicable), tariff's and incidental charges upon check-out. All approved banquet food and beverage and miscellaneous charges shall be posted to the master account and approved in writing by The Group or The Group's authorized designee. The master account will be paid in full by credit card within thirty (30) days after receipt of a correct final bill. All master account charges not paid within Ten (10) days of the billing date will bear interest at the lower of the rate of 1.5% per month, compounded monthly, if permissible by law, or the highest rate permissible by law. Should The Hotel, in its sole discretion, deem collection action necessary in regard to outstanding balances hereunder, all costs associated with that collection action, including attorney's fees, shall be posted to the master account. It is noted that The Group is tax exempt and proper paperwork will be provided to The Hotel prior to check-in.

Individual guest accounts are payable at check-out by cash, check or credit card.

AUDIO-VISUAL, PROPERITIES, CONFERENCE EQUIPMENT & SPECIAL SERVICES

Due to the sensitive nature of the material being presented at this Government conference, The Hotel understands that The Group will be providing all of their own audio-visual and production equipment to support this conference and that no additional charges or fees will be assessed to The Group for utilizing an outside vendor.

Additionally, The Hotel will provide complimentary rigging services to The Group in the Plaza Ballroom on Sunday, March 21, 2004 from 2:00pm – 4:00pm and on Thursday, March 25, 2004 from 10:00am – 12:00pm.

Further, The Hotel will provide complimentary use of all in-house sound systems and patches to meeting rooms as well as complimentary 120 volt service for existing outlets in all meeting and function space and one 100 amp three phase @208 volt service in the Plaza Ballroom and a small refrigerator in registration.

All electrical services are contracted through the Hotel's Convention Services Department. Electrical service order forms are available through the Convention Services Department and should be returned 15 days prior to the event.

EEP 1/23/02

All signs must be professionally printed and their placement and posting be pre-approved by the Convention Services Department. Nothing shall be posted, nailed, screwed or otherwise attached to walls, floors, or other parts of the building or furniture. Distribution of gummed stickers or labels is strictly prohibited.

Each meeting room utilized by The Group will be provided complimentary pens, pads and mints by The Hotel. Further, The Hotel will provide complimentary use of the on-property stanchions and one podium and one easel for each meeting room used. Complimentary staging (limited to inventory owned) will be available to The Group. The Hotel will provide five (5) complimentary house phones for internal Hotel calls and will provide complimentary lock and key service on four small meeting rooms and seating areas in the prefunction space.

The Group will receive complimentary storage and handling charges for the first fifty (50) boxes not to exceed a total of 500lbs. Additional charges for shipping and storage will be confirmed by The Hotel six (6) months prior to the arrival of The Group.

The Group shall have free and clear complimentary access to existing data network and cabling infrastructure within the hotel to allow for data/telecommunications requirements for The Department of Defense and it's contractors for the duration of this event. This would include the use of any existing or newly installed telecommunications infrastructure, including copper and fiber optic based cabling. The Group will also have free and clear complimentary access to the internet via a full T-1 circuit, provided by The Hotel, and will allow complimentary access for an outside telecommunications carrier to bring T-1 and any telephone service or lines to The Hotel if requested or required by The Department of Defense or its assigned contractors for this event. It is further understood that this access and use of any additional network or network security equipment shall not alter the confidentiality, integrity or availability of the Hotel's data/telecommunications network.

## INSURANCE AND INDEMNIFICATION

The Hotel and The Group each agree to carry and maintain and provide evidence of liability and other insurance in amounts sufficient to provide coverage against any claims arising from any activities arising out of or resulting from the respective obligations pursuant to this contract. The Group's insurance policy shall name the Hotel as an additional insured. Damage to the Hotel premises by The Group or appointed contractors will be at the Group's responsibility. The Hotel is not responsible for any loss or damage no matter how caused, to any samples, displays, properties, or personal effects brought into the Hotel unless said damage is the result of the sole negligence of The Hotel, its employees, agents, contractors, servants and/or assigns.

The Hotel shall indemnify, defend and hold harmless the Group and its officers, directors, partners, agents, members and employees from and against any and all demands, claims, damages to persons or property, losses and liabilities, including reasonable attorney's fees (collectively "Claims") arising out of or caused by the Hotel's negligence in connection with the provision of services or the use of the Hotel facilities. The Hotel shall not have waived or be deemed to have waived, by reason of this paragraph, any defense which it may have with respect to such claims.

EEP
1/23/02

The Group shall indemnify, defend and hold harmless the Hotel and its officers, directors, partners, agents, members and employees from and against any and all demands, claims, damages to persons or property, losses and liabilities, including reasonable attorney's fees (collectively "Claims") arising out of or caused by the Group's negligence and/or its members' negligence in connection with the use of the Hotel facilities. The Group shall not have waived or be deemed to have waived, by reason of this paragraph, any defense which it may have with respect to such claims.

Moreover, the Hotel and group will each indemnify and hold harmless the other from any liability arising from violations of the Americans with Disabilities Act by the indemnifying party.

**AUTHORITY**

The persons signing the agreement on behalf of The Hotel and The Group each warrant that they are authorized to make agreements and to bind their principals to this agreement.

**MISCELLANEOUS PROVISIONS**

This contract is made and to be performed in Denver, Colorado and shall be governed by and construed in accordance with Colorado law. By executing this agreement, The Group consents to the exercise of personal jurisdiction over it by the courts of the State of Colorado. This contract is the entire agreement between the parties, superseding all prior proposals both oral and written, negotiations, representations, commitments and other communications between the parties, and may only be supplemented or changed in writing, signed by a representative of The Group and the Hotel's General Manager. No representative of The Hotel has been or is authorized to make any representation which varies from the express terms of this contract, though this contract may be supplemented or amended in writing. In the event of litigation arising from or associated with this contract, the parties agree that the prevailing party therein shall recover its attorneys' fees and costs incurred therein. Any legal action in connection with this agreement shall be brought or maintained only in the courts of the State of Colorado, and only in the City and County of Denver. No food and/or beverage of any kind will be permitted to be brought into the Hotel by The group or any of the group's guests.

The Hotel shall notify The Group ninety (90) days in advance of any construction, remodeling or renovations to be performed in The Hotel or on Hotel property during The Groups meeting dates. The Hotel represents and warrants that such construction, remodeling and/or renovations shall not interfere with The Groups peaceful and/or visual use of the facility in any form or fashion. Should it be determined that interference has been caused, The Hotel will provide compensation to The Group.

The Hotel and The Group understand and realize that the terms, conditions and contractual obligations contained within this Agreement as well as all oral conversations and decisions by The Hotel and The Group as it relates to this Agreement are of a confidential nature and both The Hotel, its representatives and assigns, and The Group will take great care in protecting these words and will not release or reveal any information contained within or pertaining to this Agreement without prior written permission from the other party.

EEP 1/23/02

ACCEPTANCE

It is our understanding that the above arrangements are to be held until January 25, 2002. Should another organization request the above dates, The Hotel will contact The Group immediately and offer The Group the first right of refusal i.e. The Group will need to make a commitment via a signed contract or forfeit the rooms and space. The Hotel will require a decision within 72 hours of notification.

This contract shall be deemed accepted only after it has been signed by a representative of The Group and thereafter signed by a representative of The Hotel. Acceptance may be made by facsimile transmission and this contract may be executed in one or more counterparts, each of which when executed, shall be deemed to be an original, and all of which shall be deemed to be the same agreement.

We look forward to working with you and to hosting a memorable meeting.

By The Groups authorized representative:

Elizabeth E. Porter 1-23-02

Ms. Elizabeth Porter Date
President
Porter Productions, Inc.

By the Hotel's authorized representative:

Brian Fedorowicz 2/5/02

Brian Fedorowicz Date
Director of Sales
Adams Mark Denver

EEP
1/23/02

## ATTACHMENT ONE– FOOD AND BEVERAGE

The Group will host a plated banquet dinner in rounds of 8 for approximately 1,000 people on one evening during the event. The banquet dinner will consist of green salad with assorted dressings, sorbet, a beef entree, a vegetable and a starch, rolls and butter, a dessert and Starbucks coffee, Starbucks decaffeinated coffee and iced tea and three cash bars for a three hour period. The cost for the banquet dinner will be $33.00 per person inclusive of gratuity and service charges. The Group is tax exempt. The exact menu will be determined four (4) months prior to The Group's arrival by the Convention Services Manager and The Group.

1500 x $33.00 = $49,500 — 1000 x $33 = $33 K

The Group will host a reception offering "reception package 1" for approximately 800 people on one evening during the event. "Reception package 1" will consist of 6 hot pieces per person and 3 cold pieces per person, bottled waters and three cash bars for a three hour period. The cost for the "reception package 1" will be $20.75 per person inclusive of gratuity and service charges. The Group is tax exempt. The exact menu will be determined four (4) months prior to The Group's arrival by the Convention Services Manager and The Group.

800 x $20.75 = $16,600

The Group will host a reception offering "reception package 2" for approximately 50 people on one evening during the event. "Reception package 2" will consist of 3 hot pieces per person and 2 cold pieces per person and one cash bar for a one hour period. The cost for the "reception package 2" will be $16.00 per person inclusive of gratuity and service charges. The Group is tax exempt. The reception may be held in Capitol Bar. The exact menu will be determined four (4) months prior to The Group's arrival by the Convention Services Manager and The Group.

500 x 16.00 = $800.00

The Group will host a plated lunch for approximately 40 people on one day during the event. The lunch will consist of a gourmet sandwich such as a club sandwich, sliced fruit, salad, chips, dessert and iced tea. The cost for the lunch will be $18.95 per person inclusive of gratuity and service charges. The Group is tax exempt. The exact menu will be determined four (4) months prior to The Group's arrival by the Convention Services Manager and The Group.

40 x $18.95 = $758.00

The Group will host a plated breakfast in rounds of 8 for approximately 1000 people on one morning during the event. The breakfast will consist of chilled fruit juices, egg dish, meat, potatoes, sliced fresh fruit, assorted breakfast bakeries and freshly brewed Starbucks coffee, Starbucks decaffeinated coffee and regular and herbal teas. The cost for the breakfast will be $18.50 per person inclusive of gratuity and service charges. The Group is tax exempt. The exact menu will be determined four (4) months prior to The Group's arrival by the Convention Services Manager and The Group.

1000 x 18.50 = $18,500

The Group will host a "break package 1" on approximately 4 days for approximately 1000 people. The "break package 1" will consist of a one hour morning service with freshly brewed Starbucks coffee, Starbucks decaffeinated coffee and regular and herbal teas and juice with a mid-morning refresh with assorted breakfast bakeries and an one hour afternoon service with soft drinks (Pepsi & Coke products), bottled waters and snack items (cookies, brownies, bagged chips, etc). The cost for the "break package 1" will be $14.75 per person inclusive of gratuity and service charges. The Group is tax exempt. The exact menu will be determined four (4) months prior to The Group's arrival by the Convention Services Manager and The Group.

1000 x 14.75 x 4 dys = $59,000

The Group will host a "break package 2" on approximately 5 days for approximately 50 package 2" will consist of a two hour morning service with freshly brewed Starbuck decaffeinated coffee and regular and herbal teas, juice and soft drinks with a mid-morning breakfast bakeries and fruit and an one hour afternoon service with soft drinks (Pepsi & Co waters and snack items (cookies, brownies, bagged chips, etc). The cost for the "breal $16.20 per person inclusive of gratuity and service charges. The Group is tax exempt. be determined four (4) months prior to The Group's arrival by the Convention Service Group.

50 x $16.20 x 5 dys = $4050.

The Group will host approximately 10 individuals in Trattoria for approximately 6 days. T the pre-set breakfast or lunch buffet for $9.25 per person inclusive of gratuity and service c a soft drink or iced tea. The Group is tax exempt.

10 x 9.25 x 6 dys = $ .00

0• C
49,500•00 +
16,600•00 +
800•00 +
758•00 +
18,500•00 +
59,000•00 +
4,050•00 +
555•00 +
149,763•00 *
0•00 *

01/23/02 WED 16:01

CERTIFICATE OF FILING

I hereby certify that on August 19, 2005, a copy of the foregoing "DEFENDANT'S ANSWER AND COUNTERCLAIM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK